UNITED STATES DISTRICT COURT
WESTERN DISTRICT OF NEW YORK

---

CORY RANDLE and TILDA SHELTON,

        Plaintiffs,

        v.

AC ASSET SERVICES LLC,

        Defendant.

19-CV-01074-LJV
DECISION & ORDER

---

## **INTRODUCTION**

On August 13, 2019, the plaintiffs, Cory Randle and Tilda Shelton, filed a complaint alleging violations of the Fair Debt Collection Practices Act ("FDCPA"), 15 U.S.C. §§ 1692-1692p, and the Driver's Privacy Protection Act of 1994 ("DPPA"), 18 U.S.C. §§ 2721-2725. Docket Item 1. The defendant, AC Assets Services LLC, failed to appear and defend this action, and the time to do so expired. As a result, the plaintiffs asked the Clerk of Court to enter a default, which accordingly was entered on September 24, 2019. Docket Item 6. On March 20, 2020, the plaintiffs moved for a default judgment under Rule 55(b)(2) of the Federal Rules of Civil Procedure. Docket Item 9. The plaintiffs seek $22,014.33, a sum which includes $7,000 in statutory damages, $11,200 in actual damages, and $3,814.33 in attorneys' fees and court costs. *Id.*

For the reasons that follow, this Court grants the plaintiffs' motion in part.

**BACKGROUND**

Randle and Shelton incurred payday loan debts for the purchase of everyday household items.[1]  Docket Item 1 at 3.  Although the defendant "d[id] not own or possess chain of title to any of [these] debts," it nevertheless "represented to a database that it was seeking personal information on the [p]laintiffs for legitimate collection purposes" and thereby obtained their Social Security and telephone numbers.  *Id.* at 2-3.  The database was information derived from non-public motor vehicle records.  *Id.* at 4.

The defendants then left a voicemail message for Randle that stated:

> Hi, Jaqueline Randle or Corey Randle our final verification of assets has been complete, Case Number 44341.  Your case has been cost productive for a lawsuit to be filed as a direct attachment through Stark County if there is not a valid response by Friday, which is listed here as March 15, 2019.  Please call (888) 206-9985.

*Id.* at 3.  The defendant also called Shelton and, when she stated she could not make a payment, "informed her that she was going to face a 'bigger problem once taken to court.'"  *Id.*  The defendant "never had any intention or legal ability," however, "to file a lawsuit against either plaintiff.

On August 13, 2019, the plaintiffs commenced this action.  Docket Item 1.  On September 13, 2019, they filed an affidavit of service, attesting that the defendant was served on August 22, 2019.  Docket Item 3.  Because the defendant has not appeared

---

[1]  Upon entry of default, the court accepts as true the complaint's factual allegations, except those relating to damages, and draws all reasonable inferences in the moving party's favor.  *See Finkel v. Romanowicz,* 577 F.3d 79, 84 (2d Cir. 2009); *Greyhound Exhibitgroup, Inc. v. E.L.U.L. Realty Corp.*, 973 F.2d 155, 158 (2d Cir. 1992) (citing *Flaks v. Koegel,* 504 F.2d 702, 707 (2d Cir.1974)).

or otherwise defended this action, the plaintiffs seek entry of a default judgment. Docket Item 9.

## LEGAL PRINCIPLES

### I.     DEFAULT JUDGMENT

Rule 55 of the Federal Rules of Civil Procedure sets forth the multi-step and multi-pronged process for obtaining a default judgment. *See generally Enron Oil Corp. v. Diakuhara*, 10 F.3d 90, 95 (2d Cir. 1993). Rule 55(a) states that "[w]hen a party against whom a judgment for affirmative relief is sought has failed to plead or otherwise defend, and that failure is shown by affidavit or otherwise, the clerk must enter the party's default." Fed. R. Civ. P. 55(a). If, as here, the plaintiff seeks a judgment for an amount other than a "sum certain," she then "must apply to the court for a default judgment." Fed. R. Civ. P. 55(b). That step, in turn, involves a multi-pronged analysis: (1) legal liability, (2) equitable considerations, and (3) damages calculation. The Clerk of Court previously entered a default against the defendant, so the Court proceeds to the Rule 55(b) considerations.

To determine whether to enter a default judgment, courts first decide whether "liability is established as a matter of law when the factual allegations of the complaint are taken as true." *Bricklayers & Allied Craftworkers Local 2, Albany, N.Y. Pension Fund v. Moulton Masonry & Const., LLC*, 779 F.3d 182, 187 (2d Cir. 2015) (citing *City of New York v. Mickalis Pawn Shop, LLC*, 645 F.3d 114, 137 (2d Cir. 2011)). "[I]t [is] the plaintiff's burden to demonstrate that those uncontroverted allegations, without more, establish the defendant's liability on each asserted cause of action." *Gunawan v. Sake Sushi Rest.*, 897 F. Supp. 2d 76, 83 (E.D.N.Y. 2012) (collecting cases).

Courts then consider whether equitable factors favor the entry of a default judgment. "Court[s] [are] guided by the same factors [that] apply to a motion to set aside entry of a default." *Rodriguez v. Almighty Cleaning, Inc.*, 784 F. Supp. 2d 114, 123 (E.D.N.Y. 2011). Those factors include "(1) whether the default was willful; (2) whether setting aside the default would prejudice the adversary; and (3) whether a meritorious defense is presented." *Enron*, 10 F.3d at 96 (citations omitted). Willfulness encompasses "conduct that is more than merely negligent or careless" and is appropriate "where the conduct of counsel or the litigant was egregious and was not satisfactorily explained." *S.E.C. v. McNulty*, 137 F.3d 732, 738 (2d Cir. 1998) (citation omitted). Prejudice requires a showing of more than "delay alone"; instead, the delay must have caused the loss of evidence, created increased difficulties in discovery, or provided increased opportunity for fraud and collusion. *Davis v. Musler*, 713 F.2d 907, 916 (2d Cir. 1983). And to present a meritorious defense, "the defendant need not establish his defense conclusively, but he must present evidence of facts that, 'if proven at trial, would constitute a complete defense.'" *McNulty*, 137 F.3d at 740 (quoting *Enron*, 713 F.2d at 98) (additional citation omitted).

Finally, if a court determines that entry of default judgment is legally and equitably appropriate, it determines the amount of damages. Although a party's default "is deemed to constitute a concession of all well[-]pleaded allegations of liability," it "is not considered an admission of damages." *Greyhound Exhibitgroup, Inc. v. E.L.U.L. Realty Corp.*, 973 F.2d 155, 158 (2d Cir. 1992). "The district court [therefore] must . . . conduct an inquiry in order to ascertain the amount of damages with reasonable certainty." *Credit Lyonnais Sec. (USA), Inc. v. Alcantara*, 183 F.3d 151, 155 (2d Cir.

1999) (citation omitted).  "If . . . the amount of damages must be ascertained, the court may conduct a hearing or order a reference."  *Enron*, 10 F.3d at 95 (citing Fed. R. Civ. P. 55(b)(2)).

"The dispositions of motions for . . . defaults judgments . . . are left to the sound discretion of a district court."  *Id.* at 95.  But as a rule, "defaults are generally disfavored and are reserved for rare occasions."  *Id.* at 96.  *Cf. New York v. Green*, 420 F.3d 99, 104 (2d Cir. 2005) (characterizing a default judgment as "the most severe sanction [that a] court may apply" and explaining that although "[a] motion to vacate a default judgment is addressed to the sound discretion of the district court, . . . [the Second Circuit] ha[s] expressed a strong preference for resolving disputes on the merits" (citations omitted)).

## II. FDCPA

"In order to establish a claim under the FDCPA, the following elements must be present:  (1) [the] plaintiff is a 'consumer' as defined by the FDCPA; (2) the 'debt' must arise out of transactions that are 'primarily for personal, family or household purposes'; (3) [the] defendant is a 'debt collector' as defined by the FDCPA; and (4) [the] defendant must have violated one of the specific statutory prohibitions regarding debt collection communication and/or activity."  *Wallace v. Manley Deas Kochalski*, *LLC*, No. 3:13-CV-00031-H, 2013 WL 3338687, at *3 (W.D. Ky. July 1, 2013) (quoting *Wallace v. Wash. Mut. Bank*, 683 F.3d 323, 326 (6th Cir. 2012)).

## III. DPPA

Under the DPPA,

> Personal information [obtained by a state department of motor vehicles in connection with a motor vehicle record] shall be disclosed . . . [f]or use in the normal course of business by a legitimate business . . . only for the purposes of preventing fraud by, pursuing legal remedies against, or recovering on a debt or security interest against, the individual.

18 U.S.C. § 2721(b)(3)(B).  The act also states that "[i]t shall be unlawful for any person knowingly to obtain or disclose personal information, from a motor vehicle record, for any use not permitted,"  18 U.S.C. § 2722(a), and provides a private right of action for individuals to sue "person[s] who knowingly" violate that provision, 18 U.S.C.§ 2724(a).

## DISCUSSION

## I. FDCPA CLAIM

### A. Liability

The plaintiffs assert that the defendant violated the FDCPA by falsely threatening lawsuits and by failing to send required notices of debt collection.  *See* Docket Item 1 at 4 (citing 15 U.S.C. § 1692e(5); 15 U.S.C. § 1692g).

Under 15 U.S.C. § 1692e(5), "[a] debt collector may not use any false, deceptive, or misleading representation or means in connection with the collection of any debt. Without limiting the general application of the foregoing, the following conduct is a violation of this section: . . .  The threat to take any action that cannot legally be taken or that is not intended to be taken."  *Id.*  And under 15 U.S.C. § 1962g, "[w]ithin five days after the initial communication with a consumer in connection with the collection of any debt, a debt collector shall . . . send the consumer a written notice containing [certain information]."  *Id.*

6

Taking the undisputed facts in the plaintiff's complaint as true, the Court is satisfied that the defendant's actions violated the FDCPA.  The defendant did not have any right to the consumer debts at issue, and so it could not have taken any legal action against either plaintiff.  The defendant also failed to send the required notices to the plaintiffs.  The defendant's liability under the FDCPA therefore is established.

### B.     Equities

The plaintiffs argue that the equities favor entry of a default judgment in light of the defendant's willful disregard for this matter.  In support, the plaintiffs have submitted an affidavit from their counsel detailing sixteen communications or attempted communications with the defendant's counsel over the course of five months—communications which the plaintiffs' counsel asserts included efforts to negotiate a settlement.  *See* Docket Item 8; *see also* Docket Item 9-2 (time entries).  The plaintiffs also have submitted a copy of an email exchange between their and the defendant's counsel.  *See* Docket Item 9-4.

The Court agrees that the equities favor entry of a default judgment.  The default appears willful given defense counsel's knowledge of this case and his failure to enter a notice of appearance or otherwise defend this action.  Moreover, not entering the default would prejudice the plaintiffs, given the defendants' failure to negotiate a settlement.  And there do not appear, on the face of the complaint, to be meritorious defenses to the plaintiffs' claims.  The Court therefore turns to the issue of damages.

## C. Damages

### 1. Statutory Damages

Under the FDCPA, the Court may award each plaintiff up to $1,000 in statutory damages. 15 U.S.C. § 1629k(a)(2)(A). Proof that the statute was violated warrants damages, "although a court must then exercise its discretion to determine how much to award, up to the $1,000 ceiling." *Savino v. Comput. Credit Inc.*, 164 F.3d 81, 86 (2d Cir. 1998).

In calculating an appropriate award of statutory damages, courts consider relevant factors such as the frequency, persistence, nature, and intentionality of noncompliance by the debt collector. 15 U.S.C. § 1692k(b)(1). Awards of the $1,000 statutory maximum are rare and "are typically granted [only] in cases where a defendant's violations are 'particularly egregious or intimidating.'" *Carbin v. N. Resolution Grp., LLC*, No. 12-CV-1108JTC, 2013 WL 4779231, *2 (W.D.N.Y. Sept. 5, 2013) (quoting *Cordero v. Collection Co.*, No. 10 CV 5960(SJ)(WP), 2012 WL 1118210, *2 (E.D.N.Y. Apr. 3, 2012)).

Here, both Randle and Shelton seek $1,000 in statutory damages. Docket Item 1 at 5. The complaint alleges that Randle received one voicemail and that Shelton spoke with the defendant once. Randle also submitted a declaration stating that both he and his relatives received additional phone calls from the defendant, though he did not specify the number of, or period of time over which, these calls occurred. Docket Item 9-3 at 2-3. Shelton similarly submitted a declaration stating that she received additional calls of a "frequent and hectoring nature," but she provided neither a count nor a time period. *Id.*

The Court finds that a damages award of $1,000 is not warranted by the facts of this case. *See, e.g.*, *Fajer v. Kaufman, Burns & Assocs.*, No. 09-CV-716S, 2011 WL 334311, at *3 (W.D.N.Y. Jan. 28, 2011) (deeming $1,000 "excessive" where the defendant made numerous calls to the plaintiff's home and workplace and made empty threats of litigation). With respect to Randle—who alleges harassing calls made to him and his family members, as well as that he actually made payments to the defendant when none were due—$500 is an appropriate amount of damages. *See, e.g. id.* (awarding $500); *Barksdale v. Glob. Check & Credit Servs., LLC*, No. 09-CV-1034A, 2010 WL 3070089, at *2 (W.D.N.Y. Aug.4, 2010) (awarding plaintiff $500 for multiple harassing calls, empty threats of litigation and arrest, and failing to provide required debt validation information). And with respect to Shelton—who alleges one phone call and an unspecified number of additional calls—$250 is an appropriate amount of damages. *See*, *e.g., Twarozek v. Midpoint Resol. Grp., LLC,* No. 09-CV-731S, 2011 WL 3440096, at *4 (W.D.N.Y. August 8, 2011) (awarding $250 for violation consisting of one improper telephone call made by defendant in addition to its improper disclosure of information to a third party and false representations); *Estay v. Moren & Woods, LLC,* No. 09-CV-620A, 2009 WL 5171881 at *2 (W.D.N.Y. Dec. 22, 2009) (awarding the plaintiff $250 where the defendant made harassing calls on more than one occasion, made empty threats of litigation, and improperly disclosed information about the plaintiff's debt to a third party).

    **2.**    **Actual Damages**

An individual harmed under the FDCPA also may collect "any actual damages" suffered as a consequence. 15 U.S.C. § 1629k(a)(1). "Actual damages are intended to

compensate a plaintiff for 'out of pocket expenses, personal humiliation, embarrassment, mental anguish, and/or emotional distress that results from defendant's failure to comply with the FDCPA.'" *Annis v. E. Asset Mgmt., LLC*, No. 08-CV-458S, 2010 WL 1035273, at *5 (W.D.N.Y. Mar. 18, 2010) (citation omitted).  Randle seeks both economic and noneconomic actual damages; Shelton seeks only the latter.

### a. Economic Damages

Randle requests $1,200 in actual monetary damages.  Docket Item 1 at 1.  He states in his declaration that he "believe[s] [he] made three or four payments, perhaps totaling $1,200."  Docket Item 9-3 at 3.  In an email exchange between Randle's counsel and the defendant's counsel, the defendant's counsel admits that Randle made "roughly $1k in payments" to the defendant.  Docket Item 9-4 at 2.

Because Randle has not provided any additional evidence, such as bank account statements or invoices, to support the additional $200 in payments he "believe[s]" he made, the only payment amount the Court can determine "with reasonable certainty," *Credit Lyonnais*, 183 F.3d at 155, is the $1,000 that the defendant's counsel admitted.  The Court therefore awards Randle $1,000 in actual economic damages.

### b. Noneconomic Damages

"While the FDCPA does not define 'actual damages,' it is commonly accepted that a prevailing plaintiff may recover for emotional distress damages."  *Harding v. Check Processing, LLC*, No. 5:10CV2359, 2011 WL 1097642, at *2 (N.D. Ohio Mar. 22, 2011) (citation omitted).  "Although a plaintiff may rely on his own testimony to establish such damages, 'he must explain the circumstances of his injury in reasonable detail,' and may not 'rely on conclusory statements' unless the 'facts underlying the case are so inherently degrading that it would be reasonable to infer that a person would suffer

10

emotional distress from the Defendants action.'" *Davis v. Creditors Interchange Receivable Mgmt., LLC*, 585 F. Supp. 2d 968, 976 (N.D. Ohio 2008) (quoting *Wantz v. Experian Info. Sols.*, 386 F.3d 829, 834 (7th Cir. 2004), *abrogated on other grounds by Safeco Ins. Co. of America v. Burr*, 551 U.S. 47 (2007)).

Randle requests $5,000 in noneconomic damages because he "had a surgery interrupted by [the d]efendant's actions; was embarrassed in front of his family, and was unable to stop [the d]efendant's false threats."  Docket Item 9 at 8; *see also* Docket Item 9-3 (Randle declaring that the defendant "called [his] mother-in-law and other relatives and claimed that [he] owed them money").

With respect to the claim of "surgery interrupt[ion]," that characterization appears to be an overstatement.  Randle states that he "was in surgery" when the defendant first contacted him; that he returned the call a day later; and that "[t]wo days later, [he] was readmitted to the hospital as a result of an infection at the surgical site."  Docket Item 9-3 at 2.  Although the storyline is unfortunate, it conspicuously lacks any allegation—let alone medical corroboration—that the infection was causally related to the defendant's conduct.  And with respect to the calls to Randle's relatives, Randle has not submitted any affidavits from those individuals affirming that those calls occurred or otherwise supporting his claims of embarrassment.  But the final claim—that Randle was unable to stop the calls after he learned that the defendant was not acting unlawfully—is substantiated by the defendant's admission to having received payments and therefore merits some damages award.

The Court therefore finds that an award of $1,000 is appropriate given the additional mental anguish caused by Randle's having actually paid a sum of money to

11

the defendant and the subsequent stress he experienced attempting to recover that money. *See, e.g.*, *Harding*, 2011 WL 1097642, at *2-3 (awarding $5,000 where the plaintiff sought $25,000 for embarrassment due to disclosure of her debts to her mother and for exacerbation of an existing heart condition because, although the plaintiff asserted that the defendant's conduct aggravated her condition, she had not submitted any corroborating medical evidence to support that claim); *Annis*, 2010 WL 1035273, at *5 (awarding $3,500 where the plaintiff sought $5,000 for emotional distress and embarrassment due to disclosure of her debts to her parents because, although the plaintiff's claims were not "unduly overstated or exaggerated," and although she had submitted affidavits from her parents supporting her claims that the defendant had contacted them, she had not submitted any medical evidence corroborating the extreme degree of emotional distress alleged).

Shelton similarly requests $5,000 in noneconomic damages because she "had a tangible manifestation of her increased anxiety: higher blood pressure." *Id.* at 8; *see also* Docket Item 9-5 at 3 (Shelton declaring that "[d]uring the period of [the defendant's] calls, [her] prescribed dosage of [her] blood pressure medication was increased first to 300mg and then to 450mg"—increases she "believe[s] . . . w[ere] necessitated, in significant part, by the increased stress [she] suffered on a daily basis during [the defendant's] campaign of harassing and misleading calls").

Shelton has not submitted any additional documentation—medical or otherwise—to corroborate her claim of increased anxiety. The Court nevertheless acknowledges that the threat of litigation was likely to cause some deterioration in Shelton's mental health and awards her $500 in actual damages. *Cf. Mostiller v. Chase*

*Asset Recovery Corp.*, No. 09-CV-218A, 2010 WL 335023, at *3 (W.D.N.Y. Jan. 22, 2010) (awarding $250 because the "plaintiff ha[d] argued reasonably that a threat of litigation, especially an improper threat, generally is a stressful experience").

## II.     DPPA CLAIM

### A.     Liability

The plaintiffs also assert that the defendant violated the DPPA.  More specifically, they allege:

> [The d]efendant used a database, which on information and belief [was] derived from non-public motor vehicle records, to obtain [the p]laintiffs' personal information, including their telephone numbers and Social Security Numbers.  On information and reference, [the d]efendant [did so by] misrepresent[ing] to this database that it was a "legitimate business" using this information for a "permissible purpose."

Docket Item 1 at 4-5 (quoting 18 U.S.C. § 2721(b)(3)(B)).

Taking the undisputed facts in the plaintiffs' complaint as true, the Court is satisfied that the defendant's actions violated the DPPA.  The defendant obtained the plaintiffs' information from non-public motor vehicle records; and, given the defendant's lack of any legal interest in the debts, that action was without a legitimate business purpose.  The defendant's liability under the DPPA therefore is established.

### B.     Equities

For the reasons stated above in the context of the plaintiffs' FDCPA claims, the Court also finds that the equities favor entry of a default judgment on the plaintiffs' DPPA claims.

### C.     Damages

When a defendant is found to have violated the DPPA, "[t]he court may award actual damages, but not less than liquidated damages in the amount of $2,500." 18 U.S.C.§ 2724(b)(1).  The Court therefore grants both Randle's and Shelton's requests for $2,500 in statutory damages.

### III.     ATTORNEYS' FEES

Under both the FDCPA and the DPPA, courts have discretion to award reasonable attorneys' fees to successful litigants. *See* 15 U.S.C. § 1692k(a)(3); 18 U.S.C. § 2724(b)(3).  A court should consider case-specific variables in setting a reasonable hourly rate, which in turn should be used to calculate the "presumptively reasonable fee."  *Arbor Hill Concerned Citizens Neighborhood Ass'n v. Cty of Albany*, 493 F.3d 110 (2d Cir. 2007), *amended on other grounds by* 522 F.3d 182 (2d Cir. 2008).  The hourly rates charged in the reviewing court's district are presumptively the rates that the court should use.  *Simmons v. N.Y.C. Transit Auth.*, 575 F.3d 170, 174-75 (2d Cir. 2009).  Therefore, this Court considers the prevailing market rate in the Western District of New York in determining a reasonable fee here.  *See Blum v. Stenson*, 465 U.S. 886, 896 n.11 (1984) (considering the market rate for "similar services by lawyers of reasonably comparable skill, experience, and reputation").

In support of their motion, the plaintiffs submitted time records indicating that 10.1 hours were expended by Jonathan Hilton, Esq., an attorney with four years of experience and two years specializing in consumer actions; 1.8 hours were spent by Geoffrey Parker, Esq., an attorney with similar experience; 1.0 hour was spent by Matthew Stewart, Esq., a law school graduate not yet admitted to the state bar; and 1.0

hours were spent by Alexander Harvey, a law student with prior experience as a paralegal.  Docket Items 9-1, 9-2.  The requested hourly rate for attorneys Hilton and Parker is $250; the requested rate for Stewart is $180; and the requested rate for Harvey is 130.  Docket Item 9 at 9-10.

Given recent case law in this district, the Court finds requested hourly rates to be reasonable.  *See, e.g.*, *Eades v. Kennedy, PC. Law Offices*, 343 F. Supp. 3d 104, 108 (W.D.N.Y. 2018) (awarding hourly rate of $300 for experienced FDCPA attorneys); *Langhorne v. Takhar Grp. Collection Servs., Ltd.*, No. 13-CV-231C, 2016 WL 1177980, at *2 (W.D.N.Y. Mar. 28, 2016) (awarding hourly rate of $300 for experienced FDCPA attorney); *see also Fuller v. Lakeshore Fin. LLC*, No. 2:18-CV-1722, 2019 WL 5862811, at *2 (S.D. Ohio Nov. 8, 2019) (awarding hourly rate of $130 per hour for the work of summer interns).  The Court also finds the 13.9 hours of work to be reasonable.  Using the $250 hourly rate for Hilton and Parker, the $180 rate for Stewart, and the $130 hourly rate for Harvey, this Court awards attorneys' fees to the plaintiffs in the amount of $3,285.[2]  The Court also awards the plaintiffs $525 in court and service costs under Rule 54(d)(1) of the Federal Rules of Civil Procedure.

## **CONCLUSION**

For the reasons stated above, the plaintiffs' motion for default judgment, Docket Item 9, is GRANTED IN PART and DENIED IN PART.

---

[2] The plaintiffs request $3,289.33.  Docket Item 9-2 at 3.  The $4.33 difference appears to result from an error in calculating the second entry in the time sheet. Harvey's 0.3 hours of work should have totaled $39.00, not $43.33.

**ORDER**

In light of the above, IT IS HEREBY

ORDERED that the plaintiffs' motion for default judgment is granted in part and denied in part; and it is further

ORDERED that plaintiff Randle is awarded $3,000.00 in statutory damages and $2,200.00 in actual damages, for a total of $5,200.00 in individual damages; and it is further

ORDERED that plaintiff Shelton is awarded $2,750.00 in statutory damages and $500.00 in actual damages, for a total of $3,250.00 in individual damages; and it is further

ORDERED that the plaintiffs are awarded $3,810.00 in attorneys' fees and costs; and it is further

ORDERED that the Clerk of Court shall enter judgment against the defendant in the amount of $12,260.00; and it is further

ORDERED that the Clerk of Court shall close this case.

SO ORDERED.

Dated:   September 28, 2020
         Buffalo, New York

                              /s/ Lawrence J. Vilardo
                              LAWRENCE J. VILARDO
                              UNITED STATES DISTRICT JUDGE