UNITED STATES DISTRICT COURT
WESTERN DISTRICT OF NEW YORK

---

CORY RANDLE and TILDA SHELTON,

        Plaintiffs,

     v.                                    19-CV-01074-LJV
                                            DECISION & ORDER

AC ASSET SERVICES LLC,

        Defendant.

---

On August 13, 2019, the plaintiffs, Cory Randle and Tilda Sheldon, commenced this action alleging that the defendant, AC Asset Services, LLC ("AC Asset"), violated the Fair Debt Collection Practices Act ("FDCPA"), 15 U.S.C. §§ 1692-1692p, and the Driver's Privacy Protection Act of 1994 ("DPPA"), 18 U.S.C. §§ 2721-2725. Docket Item 1. After AC Asset failed to appear and defend this action, the plaintiffs moved for a default judgment. Docket Item 9. This Court granted the plaintiffs' motion in part, Docket Item 10, and on September 29, 2020, this Court entered a default judgment against AC Asset in the amount of $12,260.00, Docket Item 11.

But shortly after this Court entered judgment, AC Asset dissolved. Docket Item 14-4 at 4-6. The plaintiffs contend that AA Recovery Solutions, Inc. ("AA Recovery"), is AC Asset's successor in interest. Docket Item 14. So the plaintiffs have moved to substitute AA Recovery for AC Asset under Federal Rule of Civil Procedure 25(c), and they have asked the Court to reissue the September 29, 2020 judgment substituting AA Recovery in place of AC Asset. *Id.* Neither AC Asset nor AA Recovery has responded to the plaintiffs' motion, and the time to do so now has passed.

For the reasons that follow, the plaintiffs' motion to substitute, Docket Item 14, is denied.

## BACKGROUND[1]

The plaintiffs' motion tells a long and somewhat complicated story about how AA Recovery took the place of AC Asset.  Here is what the plaintiffs say about the structure and operations of those two entities.

AC Asset was controlled by "the Myers-Selnik family."  Docket Item 14 at 1.  Its articles of organization list 8266 Oakway Lane, Williamsville, New York 14221 as an address.  Docket Item 14-4 at 2.  Karen Myers—who is "sometimes known as Karen Selnik," Docket Item 14 at 2—and Jeffrey Selnik both are listed as the owners of the Oakway Lane property.  Docket Item 14-2.  Nevertheless, on January 15, 2021, Jeffrey sent counsel for the plaintiffs an affidavit claiming that he had no relationship with AC Asset and that he knew little about the entity.  Docket Item 14 at 4; Docket Item 14-1.

Alexandra Myers—a relative of Karen and Jeffrey—also was involved in AC Asset, Docket Item 14 at 3; more specifically, she was a manager of the organization and signed its dissolution papers, *id*.; see Docket Item 14-4 at 4-6.  Now she is the head of recruitment for AC Asset's alleged successor—AA Recovery—and her email, amyers@aarecoverysolutions.com, has been listed as a way to contact the company on Facebook and Indeed.  Docket Items 14-5 to 14-7.

---

[1] This Court assumes the reader's familiarity with its prior decision, Docket Item 10, and the facts alleged in the complaint, Docket Item 1.  The Court therefore includes only the facts necessary to explain its decision—facts that are taken from the plaintiffs' motion to substitute and the documents attached thereto, Docket Item 14.

According to a Paycheck Protection Program loan application submitted by Occupational Management Group, LLC ("OMG"), 100% of AA Recovery is owned by OMG, which, in turn, is owned by John Chebat.  Docket Item 14-9 at 6.  Chebat's companies, including AA Recovery, have been making payments on AC Asset's lease for office space at 435 Lawrence Bell Drive, Suite 10, Williamsville, New York 14221.  Docket Item 14 at 3; Docket Item 14-3.  Moreover, the landlord for 435 Lawrence Bell Drive told counsel for the plaintiffs that AC Asset sought to have the lease reassigned to AA Recovery because AC Asset was "assumed" by AA Recovery.  Docket Item 14-3 at 2.

OMG's bank statements show that OMG made at least seven payments to "Karen Seln" dating back as far as January 2020.  Docket Item 14-10.  The plaintiffs seem to imply that the bank statements have cut off the full name of the payee and those payments were made not to a "Karen Seln," but to Karen Selnik.  *See* Docket Item 14 at 6.

Based on all that, the plaintiffs ask this Court to find that AA Recovery is the new AC Asset and therefore to substitute AA Recovery for AC Asset in the judgment that this Court issued in 2020.  *Id.* at 10.

## LEGAL PRINCIPLES

I.     **RULE 25(c)**

Rule 25(c) provides that "[i]f an interest is transferred, the action may be continued by or against the original party unless the court, on motion, orders the transferee to be substituted in the action or joined with the original party."  Fed. R. Civ. P. 25(c).  "The primary consideration in deciding a motion pursuant to Rule 25(c) is

3

whether substitution will expedite and simplify the action." *Advanced Mktg. Grp., Inc. v. Bus. Payment Sys., LLC*, 269 F.R.D. 355, 359 (S.D.N.Y. 2010) (citations and internal quotation marks omitted).  "The rule's purpose is 'to allow an action to continue unabated when an interest in a lawsuit changes hands, without initiating an entirely new suit.'" *Learning Annex Holdings, LLC v. Rich Glob., LLC*, 2011 WL 3423927, at *1 (S.D.N.Y. Aug. 3, 2011) (quoting 6 James Wm. Moore et al., *Moore's Federal Practice* § 25.30).

Substitution of a party under Rule 25(c) is permissible even after a court has already entered final judgment.  *Id.*; Moore, *supra*, § 25.31[3] ("Although substitution usually is effected during the course of litigation, substitution is appropriate even after final judgment or on appeal if the transfer of interest took place after the case was filed."); *see also Arnold Graphics Indus., Inc. v. Indep. Agent Ctr., Inc.*, 775 F.2d 38 (2d Cir. 1985) (substituting a party as a successor in interest under de facto merger doctrine after award of judgment against original party).

"[G]ranting substitution of one party . . . for another under Rule 25(c)" generally "is a discretionary matter for the trial court." *In re Chalasani*, 92 F.3d 1300, 1312 (2d Cir. 1996).  But a court may not abuse that discretion by "allowing substitution in the absence of a transfer of interest." *Id.*  Therefore, before granting a motion to substitute under Rule 25(c), a court must determine "that a party is, in fact, a successor[ ]in[ ]interest." *Levin v. Raynor*, 2010 WL 2106037, at *2 (S.D.N.Y. May 25, 2010).

4

## II. SUCCESSOR LIABILITY

Under New York law,[2] "the purchaser of a corporation's assets does not, as a result of the purchase, ordinarily become liable for the seller's debts." *Cargo Partner AG v. Albatrans, Inc.*, 352 F.3d 41, 45 (2d Cir. 2003) (citing *Schumacher v. Richards Shear Co.,* 59 N.Y.2d 239, 244–45, 451 N.E.2d 195, 198 (1983)). That is so because "[t]he amount paid for the assets would ordinarily be available to satisfy those debts, at least in part." *Id.*

But New York recognizes four exceptions to the rule that the purchaser of a corporation's assets is not liable for the seller's debts. *Id.* A purchaser may be liable as a successor where (1) the purchaser "formally assume[d] a seller's debts; (2) [a] transaction[ was] undertaken to defraud creditors; (3) [the purchaser] . . . de facto merged with a seller; [or] (4) [the purchaser] . . . is a mere continuation of a seller." *Id.* The plaintiffs argue that the last two exceptions—de facto merger and mere continuation—are relevant here. *See* Docket Item 14 at 8. Those exceptions "though routinely listed separately, are often regarded as so similar as to be considered a single exception." *Douglas v. Stamco*, 363 F. App'x 100, 102 (2d Cir. 2010) (summary order); *Cargo Partner AG*, 352 F.3d at 45 n.3 (collecting cases).

"A de facto merger occurs when a transaction, although not in form a merger, is in substance 'a consolidation or merger of seller and purchaser.'" *Cargo Partner AG*,

---

[2] "Successor liability is a question of State law." *LiButti v. United States*, 178 F.3d 114, 124 (2d Cir. 1999). AC Asset and AA Recovery are both New York entities, *see* Docket Item 14 at 7, and New York law therefore applies to determine whether AA Recovery is the successor in interest to AC Asset. *See Fly Shoes s.r.l. v. Bettye Muller Designs Inc.,* 2015 WL 4092392, at *3 n.1 *(*S.D.N.Y. July 6, 2015) ("Under New York choice-of-law rules, it is the law of the successor's state of incorporation that typically determines successor liability.").

352 F.3d at 45. (quoting *Schumacher*, 59 N.Y.2d at 245, 451 N.E.2d at 198.  To determine whether a de facto merger has occurred, courts consider "whether there is [1] continuity of ownership, [2] continuity of management, [3] a dissolution of the selling corporation, and [4] the assumption of liabilities by the purchaser."  *New York v. Nat'l Serv. Indus., Inc.*, 460 F.3d 201, 210 (2d Cir. 2006) (collecting cases).  Every factor need not be present "to find a de facto merger," *Fitzgerald v. Fahnestock & Co.*, 286 A.D.2d 573, 574–75, 730 N.Y.S.2d 70, 71 (1st Dep't 2001); "because continuity of ownership is 'the essence of a merger,'" however, "it is a necessary element of any de facto merger finding," *In re N.Y.C. Asbestos Litig.*, 15 A.D.3d 254, 256, 789 N.Y.S.2d 484, 487 (2005) (quoting *Cargo Partner AG*, 352 F.3d at 46-47); *see also Priestley v. Headminder, Inc.*, 647 F.3d 497, 505-06 (2d Cir. 2011); *Nat'l Serv. Indus.*, 460 F.3d at 210-15.

The mere continuation exception considers similar factors, such as whether there is a common identity of directors or shareholders between the predecessor and the successor and whether the seller transfers its assets, "management, personnel, physical location, good will[,] and general business operation."  *Ortiz v. Green Bull, Inc.*, 2011 WL 5554522, at *11 (E.D.N.Y. Nov. 14, 2011); *Societe Anonyme Dauphitex v. Schoenfelder Corp.*, 2007 WL 3253592, at *6 (S.D.N.Y. Nov. 2, 2007).  And just as continuity of ownership is key to the application of the de facto merger exception, "the common identity of directors or shareholders is a key requirement to finding a mere continuation."  *Ortiz*, 2011 WL 5554522, at *11.  Without continuity of stock, shareholders, or directors, the mere continuation exception will not apply.  *See id.* at *11-12.

**DISCUSSION**

The plaintiffs argue that under both the de facto merger doctrine and the mere continuation doctrine, AA Recovery is the successor in interest of AC Asset. Docket Item 14 at 9-10. They therefore assert that AA Recovery should be substituted for AC Asset, and they ask this Court to reissue the judgment in this case. *Id.*

As an initial matter, "Rule 25(c) does not specify a method for deciding motions." *Luxliner P.L. Exp., Co. v. RDI/Luxliner, Inc.*, 13 F.3d 69, 72 (3d Cir. 1993). But the relief that the plaintiffs seek is not merely substituting a defendant who will stand in the shoes of a predecessor to litigate the case. Rather, they ask this Court to enter a default judgment that will impose liability against the successor company. *See* Docket Item 14 at 10 (asking the Court to "reissue the judgment of September 2[9],2020, substituting the name 'AA Recovery Solutions, Inc.' for the name AC Asset Services LLC"). In other words, the plaintiffs ask the Court not to substitute a company to defend claims against a predecessor but to impose liability on a company because its predecessor defaulted.

Under such circumstances, it would be unfair to grant the plaintiffs' motion and reissue the default judgment against the successor unless, at a minimum, the threshold for a default judgment against the successor has been met—that is, unless the successor's "liability is established as a matter of law when the [plaintiffs'] allegations . . . are taken as true," *Bricklayers & Allied Craftworkers Local 2, Albany, N.Y. Pension Fund v. Moulton Masonry & Const., LLC*, 779 F.3d 182, 187 (2d Cir. 2015). Here, that means ensuring that the plaintiffs' "allegations, accepted as true, . . . adequately support the application of the de facto merger [or mere continuation] doctrine." *Priestley*, 647 F.3d at 505 (emphasis omitted).

The plaintiffs contend that those doctrines apply here because (1) there is overlap between and among the owners and management of AC Asset and AA Recovery, which share the same location; (2) AC Asset has dissolved; and (3) AA Recovery assumed some liabilities of AC Asset, including its lease. Docket Item 14 at 9-10. As explained above, continuity of ownership is the linchpin of both a de facto merger and a mere continuation. *See In re N.Y.C. Asbestos Litig.*, 15 A.D.3d at 256, 789 N.Y.S.2d at 487; *Priestley*, 647 F.3d at 505-06; *Nat'l Serv. Indus.*, 460 F.3d at 210-15; *Ortiz*, 2011 WL 5554522, at *11. Therefore, this Court starts its analysis by asking whether the plaintiffs adequately allege continuity of ownership between AC Asset and AA Recovery. And the short answer is that they do not.

The plaintiffs argue that Alexandra Myers's statement to AC Asset's landlord that AA Recovery "assumed" AC Asset suggests a continuity of ownership. Docket Item 14 at 10; *see also* Docket Item 14-3 at 2-3 (landlord subpoena response). But that reads far too much into a second- or third-hand statement made in connection with a property lease. Myers's representation may well suggest that AA Recovery assumed liability for AC Asset's lease. And it may even suggest that AA Recovery continued the business operations of AC Asset in some way. But continuity of ownership requires not only that "the business of the corporation continues," but that the company itself continues through common owners or the "common identity of directors [and] stockholders." *Societe Anonyme Dauphitex*, 2007 WL 3253592, at *5 (quoting *Ladjevardian v. Laidlaw-Coggeshall, Inc.*, 431 F. Supp. 834, 839 (S.D.N.Y. 1977)). And while Alexandra Myers's statement may suggest that the business continued, it does not give rise to an inference of common ownership.

8

In fact, the plaintiffs' papers suggest just the opposite. The plaintiffs say that OMG owns 100% of AA Recovery, Docket Item 14 at 3; *see* Docket Item 14-9 at 6 (detailing ownership structure), and that Chebat owns OMG, Docket Item 14 at 3; *see* Docket Item 14-9 at 6. On the other hand, the plaintiffs say that AC Asset was controlled by "the Myers-Selnik family," Docket Item 14 at 1, and they suggest that one or more individuals from that family owned AC Asset, *id.* at 2-3. In other words, the plaintiffs do not plausibly allege continuity of ownership between the two organizations; in fact, they imply that there was no overlap in ownership.

The plaintiffs observe that Alexandra Myers—a manager at AC Asset who signed AC Asset's dissolution papers, *see* Docket Item 14-4 at 4-6—now is employed as head of recruitment for AA Recovery, *see* Docket Items 14-5 to 14-7 (suggesting that Alexandra Myers is head of recruitment). But they do not say that Alexandra Myers has an ownership interest in AA Recovery or its parent companies. So based on the plaintiffs' motion, it is entirely possible that Alexandra Myers is merely an employee without any ownership interest in AA Recovery. *Cf. Idearc Media LLC v. Siegel, Kelleher & Kahn LLP*, 2012 WL 5499496, at *3 (W.D.N.Y. Nov. 12, 2012) (granting motion to dismiss because the Court could not infer continuity of ownership from plaintiff's allegation that "several employees of [predecessor], including [the owner], were employed by [successor]"). Likewise, the fact that a relative of Alexandra Myers, Karen Selnik a/k/a Karen Myers, received payments from the parent of AA Recovery, OMG, Docket Item 14 at 6; *see* Docket Item 14-10 (selected bank records), may mean that she had an ownership interest in OMG or it may mean that she simply was an employee on its payroll. And for that reason, the plaintiffs' allegations are insufficient to

9

show that Karen Selnik had an ownership interest in AA Recovery or its parent company—especially when the records show that Chebat indirectly owns 100% of AA Recovery and OMG, *see* Docket Item 14-9 at 6.

In short, the facts alleged by the plaintiffs, accepted as true, do not suggest continuity of ownership between AA Recovery and AC Asset. For that reason, they do not adequately support application of the de facto merger or mere continuation doctrine, and "[i]t would be an abuse of discretion" for this Court to substitute AA Recovery for AC Asset "in the absence of a transfer in interest," *see Software Freedom Conservancy, Inc. v. Best Buy Co.*, 2010 WL 4860780, at *3 (S.D.N.Y. Nov. 29, 2010) (quoting *In re Chalasani*, 92 F.3d at 1312). The plaintiffs' motion for substitution therefore is denied without prejudice.

## **CONCLUSION**

For the reasons stated above, the plaintiffs' motion for substitution, Docket Item 14, is DENIED without prejudice.

SO ORDERED.

Dated: July 12, 2022
       Buffalo, New York

                 */s/ Lawrence J. Vilardo*
                LAWRENCE J. VILARDO
                UNITED STATES DISTRICT JUDGE

show that Karen Selnik had an ownership interest in AA Recovery or its parent company—especially when the records show that Chebat indirectly owns 100% of AA Recovery and OMG, *see* Docket Item 14-9 at 6.

In short, the facts alleged by the plaintiffs, accepted as true, do not suggest continuity of ownership between AA Recovery and AC Asset. For that reason, they do not adequately support application of the de facto merger or mere continuation doctrine, and "[i]t would be an abuse of discretion" for this Court to substitute AA Recovery for AC Asset "in the absence of a transfer in interest," *see Software Freedom Conservancy, Inc. v. Best Buy Co.*, 2010 WL 4860780, at *3 (S.D.N.Y. Nov. 29, 2010) (quoting *In re Chalasani*, 92 F.3d at 1312). The plaintiffs' motion for substitution therefore is denied without prejudice.

## **CONCLUSION**

For the reasons stated above, the plaintiffs' motion for substitution, Docket Item 14, is DENIED without prejudice.

SO ORDERED.

Dated: July 12, 2022
       Buffalo, New York

                 */s/ Lawrence J. Vilardo*
                LAWRENCE J. VILARDO
                UNITED STATES DISTRICT JUDGE